### In re TMI LITIGATION CASES CONSOLIDATED II.

**This Document Relates to All Plaintiffs.**

**Civil Action No. 1:CV–88–1452.**

United States District Court, M.D. Pennsylvania.

Jan. 10, 1996.

---

**2.** Discovery shall be limited to the issue of whether the agreement to arbitrate was part of the parties' contract.

Charles B. Zwally, Michael D. Reed, Mette, Evans & Woodside, Harrisburg, PA, Augustine V. Cheng, Associate General Counsel, Office of General Counsel, New York City, for George Colbert.

## MEMORANDUM AND ORDER

RAMBO, Chief Judge.

On January 5, 1996, this court filed a lengthy opinion ruling on the bulk of Defendants' pending motion *in limine* to exclude Plaintiffs' expert testimony on dose. In that order, the court indicated that it would be filing its opinion with respect to Dr. Gennady Kozubov on January 8, 1996. The court was closed on January 8 due to a blizzard which paralyzed much of the east coast. The court will now rule on the admissibility of the proffered testimony of Dr. Kozubov. For a discussion of the factual and legal background of this memorandum, the parties should refer to this court's January 5, 1996 order. *In re TMI*, No. 88–1452, 1996 WL 12079 (M.D.Pa. January 5, 1996) (memorandum of law accompanying order granting in part Defendants' motion *in limine* ). The court will proceed with its *Daubert/Paoli II* analysis.

## I. *DAUBERT/PAOLI II ANALYSIS*

Arnold Levin, Philadelphia, PA, Lee C. Swartz, Hepford, Swartz & Morgan, Harrisburg, PA, Dusan Bratic, Bratic & Portko, Dillsburg, PA, Louis M. Tarasi, Jr., Tarasi & Johnson, P.C., Pittsburgh, PA, Peter J. Neeson, LaBrum & Doak, Philadelphia, PA, Robert S. Mirin, Harrisburg, PA, Shawn A. Bozarth, Harrisburg, PA, Joseph D. Shein, Philadelphia, PA, for plaintiffs.

Alfred H. Wilcox, Pepper, Hamilton and Scheetz, Philadelphia, PA, Fred Speaker, Camp Hill, PA, for General Public Utilities Corp., Babcock & Wilcox Company, Pennsylvania Electric Company, Jersey Central Power & Light Co., Metropolitan Edison Company, McDermott Incorporated, Raytheon Constructors Inc., Burns and Roe Enterprises, Inc., and Dresser Industrial Valve and Instrument Division of Dresser Industries, Inc.

### A. *Is the Methodology Based Upon a Testable Hypothesis?*

The court understands Dr. Kozubov's hypothesis to be that trees in the TMI area were exposed to radiation during the TMI accident, and that damage from this exposure can be seen by examining the growth increments (rings) on the trees. Moreover, the Kozubov hypothesis includes an assumption that a dose can be inferred from the information obtained by examining the trees growth rings. At the hearing, Dr. Kozubov testified that his methodology, referred to as a "dendrometric analysis," had been patented in the former Soviet Union. To obtain a patent, Dr. Kozubov had to subject the methodology to rather rigorous review. (*See* Tr. at 1437.) Accordingly, the court finds that this factor weighs in favor of admitting the proffered testimony.

**B. *Has the Methodology Been Subject to Peer Review?***

At the hearing, Dr. Kozubov testified that his methodology had been discussed in two peer reviewed articles and that the methodology had been presented at two international conferences. (Tr. at 1437.) Defendants do not appear to dispute the contention that the methodology has been subject to at least minimal levels of peer review. This factor will weigh in favor of the admission of the proffered testimony.

**C. *Were There Standards Controlling the Technique's Operation?***

According to Dr. Kozubov, "[t]here are international standard operating procedures.... [and there are] national standards as far as dendrometric measurements are concerned. The standards define the methods of sample preparations, sample retrievals and sample analysis." (Tr. at 1438.) Defendants express concern that despite the existence of standards, the standards might not have been properly followed. Specifically, Defendants note that Dr. Kozubov did not give Professor Shevchenko specific instructions about how to select control trees. Further, it is unknown whether the control trees were taken from the same "urban" environment as the study trees. Finally, Defendants argue that Dr. Kozubov used weather information from the Harrisburg area and applied it to the control group of trees. The control group was located over seventy miles from Harrisburg. (2/17/95 Kozubov Rpt. at 6.) Testimony was presented at the hearing that weather conditions, among other things, would affect the growing patterns of trees. (Tr. at 1448–49; *see* McClenahen Rpt. at 2.) Thus, Defendants contend that by applying the Harrisburg weather data to the control group, Dr. Kozubov is failing to account for growth discrepancies that may be due to differing weather patterns in the area where the control group is located.

The court is satisfied that while Dr. Kozubov might not have used every standard possible to control the operation of his technique, he did employ proper standards. Thus, although the court finds Defendants' arguments to have a degree of merit, this factor will not weigh against the admission of the proffered testimony.

**D. *Is the Methodology Generally Accepted***

In his testimony, Dr. Kozubov was unable to characterize his methodology as generally accepted. His response to questioning on this subject was as follows:

Because the patent was received at the end of 1993, I cannot say that this method was tested worldwide. Plus, I have to say that fortunately, thank God, we didn't have enough places, locations in the world where we could test this method. There are only three or four sites worldwide where this methodology can be tested. So probably the term world acceptance, worldwide acceptance, would be the wrong one to use here. The Three Mile Island area is probably only the second location where we're trying and using this methodology.

(Tr. at 1438.) Based upon Dr. Kozubov's testimony, the court finds that the dendrometric methodology is not generally accepted. The court, however, will not weigh this factor heavily against the admission of the proffered testimony. As Dr. Kozubov has indicated, it is likely that the methodology lacks general acceptance more because of the paucity of nuclear disaster sites worldwide than because the methodology lacks merit.

**E. *Is There a Relationship Between the Technique and Methods that are Established to be Reliable?***

Dr. Kozubov testified that there are no established techniques in this particular area of dendrometric analysis. (Tr. at 1440.) Rather, it is the court's understanding that Dr. Kozubov is pioneering a novel scientific technique. This factor will weigh against the admission of the proffered testimony insofar as the novelty of the technique somewhat diminishes its reliability. However, the unique facts with which the court is dealing dictate that this factor not weigh heavily against admission. Indeed, the court feels uncomfortable finding that more nuclear accidents must occur so that an established and reliable methodology can be developed.

### F. Qualifications of the Expert Based Upon the Methodology

No challenge has been made regarding the credentials of Dr. Kozubov. A review of his curriculum vitae indicates that he is amply qualified to testify as to the proffered methodology. This factor will weigh in favor of the admission of the proffered testimony.

### G. Non-Judicial Uses

The methodology utilized by Dr. Kozubov was developed in the wake of the Chernobyl accident. This is the first time that the methodology has been proffered for use in litigation. In fact, Dr. Kozubov testified that he became upset when he learned that the TMI study he conducted would be used for litigation. (Tr. at 1462.) The court finds that this factor weighs in favor of the admission of the proffered testimony. That Dr. Kozubov thought that he was performing the study solely for scientific purposes speaks highly of the integrity of the study.

### H. Conclusion

The *Daubert/Paoli II* factors weigh in favor of admitting the proffered testimony. Accordingly, the court will proceed with its *Daubert* analysis pursuant to Rule 702.

### II. Rule 702 "Fit"

The touchstone of the Rule 702 analysis is helpfulness to the trier of fact. In the context of the *Daubert* analysis, the court must consider whether the proffered testimony will assist the jury in evaluating any fact in issue. Thus, to be helpful, the proffered testimony must have a logical connection to a fact in issue—it must "fit." The proffered testimony, to an extent, has a sufficient connection with a fact in issue—namely the dose question—to "fit" within the litigation. However, on cross-examination, Dr. Kozubov revealed an important caveat regarding his dendrometric analysis which bears directly on the reliability of the testimony and the testimony's "fit." Specifically, Dr. Kozubov testified as follows:

> we always say that this method is only used with other methods. *One cannot use just one method to give this estimate.*
>
> That's why in Chernobyl, we also studied the needle growth, also we studied

growth patterns, seeds and also the wilting process of the leading shoots. That's why our estimations had a compound picture. *If we use only this one method, of course we will not say that this was caused by exposure.*

(Tr. at 1460 (emphasis added).) No evidence has been presented to demonstrate that any of these other study methods were employed. Accordingly, based upon Dr. Kozubov's own statements, the court finds that the dendrometric study, standing alone, cannot speak to the issue of whether the observed tree damage resulted from radiation exposure. As such, the court is unable to envision how the proffered testimony would assist the jury in determining whether or not persons (and trees) in the TMI area at the time of the accident were exposed to radiation. The court finds that the proffered testimony lacks the requisite Rule 702 "fit" with the instant litigation.

Therefore, in accordance with the above memorandum, **IT IS HEREBY ORDERED THAT** the proffered testimony of Dr. Kozubov and his dendrometric study shall be excluded.